**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DARRELL BROWN**                                                        **CIVIL ACTION**

**VERSUS**                                                                      **No. 10-2620**

**TRANSIT MANAGEMENT OF**                                    **SECTION: I/4**
**SOUTHEAST LOUISIANA, INC.**


### ORDER AND REASONS

Before the Court is a motion[1] for summary judgment filed by defendant, Transit

Management of Southeast Louisiana, Inc. ("TMSEL").  Plaintiff, Darrell Brown ("Brown"),

opposes[2] the motion.  For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

Prior to August 31, 2009, TMSEL, under contract with the Regional Transit Authority

("RTA"), operated and managed the transit system in Orleans Parish, Louisiana.[3]  From 1986

until December 2006, TMSEL employed Brown, an African-American attorney licensed to

practice law in the State of Louisiana, in various law-related positions.[4]  During his tenure with

TMSEL, Brown gained experience with the RTA's procurement policies, procedures, practices,

history and environment.[5]  At the time of his termination in December 2006, Brown served as the

director of TMSEL's legal department.[6]

---

[1] R. Doc. No. 42.
[2] R. Doc. No. 45.
[3] R. Doc. No. 42-2, p. 1.
[4] R. Doc. No. 45, pp. 1-5.
[5] R. Doc. No. 45-6, p. 2.
[6] R. Doc. Nos. 42-8, p. 2 and 42-9, p. 2.

On August 29, 2005, Hurricane Katrina made landfall in southeast Louisiana.  The City of New Orleans suffered catastrophic flooding and the storm severely damaged the transit system.  Pre-Katrina, TMSEL employed approximately 1,350 employees and had an operating budget of approximately $120,000,000.  As a result of the storm, the RTA lost roughly 251 buses, farebox revenues dropped from $36,000,000 to zero, sales tax revenues declined by $15,000,000, and the number of TMSEL employees fell to approximately 780.[7]  Consequently, because of Katrina's significant financial impact, TMSEL eliminated its legal department in December 2006.[8]  The twelve or thirteen outside law firms, on contract to defend TMSEL in the roughly 1,600 lawsuits to which it was then a party, would continue to handle the bulk of TMSEL's legal needs.[9]

Brown, Cheryl Joshua ("Joshua"), litigation staff counsel, and Charles Rodgers, special investigator, comprised the legal department as of December 2006.[10]  TMSEL also employed two white attorneys, Marsha Hopper ("Hopper") and Mark Popkin ("Popkin"), whom Brown argues were treated more favorably than he was treated.[11]  At the time of Brown's termination, Hopper, as TMSEL's executive counsel, supervised several departments including Americans With Disabilities Act compliance, customer service, human resources, intergovernmental relations, marketing and public information in addition to the legal department.[12]  Popkin served as a safety/risk management analyst in the risk management department.[13]

---

[7] R. Doc. No. 42-3, pp. 3-4, 6.
[8] R. Doc. No. 42-8, p. 2.
[9] R. Doc. No. 42-3, p. 7.
[10] R. Doc. No. 42-8, p. 2.  Joshua, who was also an African-American attorney, died in late December 2006.  R. Doc. No. 49-1.  Neither Brown nor TMSEL has informed the Court whether Charles Rodgers was either African-American or an attorney.
[11] R. Doc. No. 42-8, p. 2.
[12] R. Doc. Nos. 42-3, p. 19 and 42-5, p. 2.
[13] R. Doc. Nos. 42-5, p. 2 and 42-8, p. 2.

Brown later applied for the position of director of contracts and procurement in April 2007 and December 2007.[14]  TMSEL eventually hired a white male, Larry Gawell ("Gawell"), who had never been employed with TMSEL, to fill the position.[15]

Because Brown believed that TMSEL's general manager, Mark Major ("Major"), terminated and subsequently refused to rehire him because of his race, he filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[16]  The EEOC issued a right-to-sue letter on May 11, 2010, and Brown filed his complaint alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, within ninety days of receipt of the letter.[17]

TMSEL responds to Brown's allegations by arguing that the legal department was eliminated because of TMSEL's dire financial circumstances following Katrina, that it never discriminated against Brown or any other African-American employee, and that Gawell was selected to fill the director of contracts and procurement position because he was the most qualified candidate for the job.[18]  TMSEL also highlights that it lost the contract with RTA to operate and manage the transit system, ceasing all operations on August 31, 2009.[19]

---

[14] R. Doc. No. 42-9, p. 1.

[15] R. Doc. No. 42-3, pp. 13-14.

[16] R. Doc. No. 45, p. 7.

[17] R. Doc. No. 2, p. 1.

[18] TMSEL also argues that because Major and deputy general manager Dwight Duplessis, the persons responsible for the final decisions with respect to Brown's employment with TMSEL, are African-American, this information is further evidence that TMSEL could not have discriminated against Brown based on his race.  R. Doc. No. 49, p. 10. The Court notes that the U.S. Eleventh Circuit Court of Appeals has "acknowledge[d] that a Title VII violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim."  *United States v. Crosby*, 59 F.3d 1133, 1135 n.4 (11th Cir. 1995) (citing *Billingsley v. Jefferson Co.*, 953 F.2d 1351, 1353 (11th Cir. 1992)). At the same time, another district court in the Fifth Circuit has stated that, " '[e]vidence that the person who made the final decision to terminate a particular plaintiff was the same race as the plaintiff undercuts any inference of discrimination.' "  *Udoewa v. Plus4 Credit Union*, 754 F.Supp.2d 850, 873 (S.D. Tex. 2010) (Rosenthal, J.) (quoting *Boice v. Se. Penn. Transp. Auth.*, 2007 WL 2916188, at *10 (E.D. Pa. Oct. 5, 2007)).

[19] R. Doc. No. 42-8, p. 2.

*LAW AND ANALYSIS*

**I.      Summary Judgment**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating " 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be

drawn in [the nonmoving party's] favor." *Id.* at 255; see *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II.      Title VII

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (internal quotation marks and citations omitted). A plaintiff may establish that the defendant has intentionally discriminated against him through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

Because Brown presents no direct evidence of discrimination, this Court must utilize the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). As the Fifth Circuit Court of Appeals has recently explained, following *McDonnell Douglas*:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. [*McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while

true, is not the only reason for its conduct, and another "motivating factor" is the
plaintiff's protected characteristic. *Rachid*, 376 F.3d at 312.

*Alvarado*, 492 F.3d at 611.

Brown argues that TMSEL intentionally discriminated against him on two occasions: (1)
when he was terminated in December 2006 and (2) when he applied for the position of director
of contracts and procurement and TMSEL ultimately hired a white male with no previous
TMSEL employment history.

Before examining each of these alleged acts of discrimination in turn, the Court first
addresses the other causes of action that Brown alleges in his complaint but does not brief in his
opposition memorandum.  First, Brown avers that TMSEL intentionally favored "light
complected" African-Americans over those with darker skin.[20]  Brown informed the Court in his
opposition that he "does not intend to pursue this contention."[21]  As Brown has abandoned this
claim, TMSEL's motion for summary judgment regarding Brown's allegations with respect to
"light complected" employees will be granted without opposition.  Second, Brown alleges in his
complaint that, in addition to applying for the position of director of contracts and procurement,
he also applied for the position of deputy general manager of operations ("operations
position").[22]  TMSEL presented summary judgment evidence that the operations position was
never filled and it further argues that Brown did not have the relevant qualifications for such
position.  Brown has presented no summary judgment evidence or argument to contest TMSEL's
assertions.  Accordingly, TMSEL's motion for summary judgment regarding Brown's
allegations with respect to the operations position will be granted without opposition.  The Court
now turns to Brown's remaining allegations of intentional discrimination at issue.

---

[20] R. Doc. No. 2., p. 4.
[21] R. Doc. No. 45, p. 14.
[22] R. Doc. Nos. 2, p. 4 and 42-9, p. 1.

### III.     Brown's Initial Termination

Brown argues that TMSEL intentionally discriminated against him when TMSEL fired

three African-American attorneys, i.e., himself, Joshua, and Kelly Whitaker ("Whitaker"), and

two white attorneys, Hopper and Popkin, but later rehired the white attorneys and not the

African-American attorneys.[23]   Under the *McDonnell Douglas* framework, Brown must present a

*prima facie* case that his termination constituted intentional discrimination.   In order to do so,

Brown must establish that he "(1) is a member of a protected class; (2) was qualified for [his]

position; (3) was subject to an adverse employment action; and (4) was replaced by someone

outside the protected class, or, in the case of disparate treatment, shows that others similarly

situated were treated more favorably."   *Okoye v. Univ. Texas Houston Health*, 245 F.3d 507,

512-13 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th

Cir. 1999) (internal quotation marks omitted).

Brown easily satisfies the first three elements of his *prima facie* case.   First, as an

African-American, he is a member of a protected class.   *Lyles v. Texas Alcohol Beverage

Comm'n*, 379 Fed. App'x 380, 383 (5th Cir. 2010).   Second, as an attorney licensed in Louisiana

with many years experience in various TMSEL law-related jobs, Brown was qualified for his

position as director of the legal department.   Third, "[a]dverse employment actions are

---

[23] Brown argues in his opposition and avers in his complaint that TMSEL at some point terminated Hopper and
Popkin and later rehired them.   However, he presents no summary judgment evidence that Hopper and Popkin were
ever terminated.   In order to support his allegations, Brown cites portions of Major's deposition.  R. Doc. No. 45-3,
pp. 10-13.   Major, in these cited portions, at no time states that Hopper and Popkin were terminated and
subsequently hired.   Rather, Major swears that Hopper and Popkin were employed continuously in 2006.   Though
Brown has failed to present any summary judgment evidence on this issue, the Court will construe these facts in
Brown's favor as the non-movant and assume that Hopper and Popkin were terminated because, ultimately, whether
Hopper and Popkin were terminated does not change the Court's analysis.   Hopper and Popkin were not similarly
situated to Brown at the time of his termination.   *See infra* pp. 8-10.
        The Court further notes that Brown also argues that Whitaker, an African-American female who was not
employed in the legal department, was also terminated and not rehired.   (Whitaker has a law degree and she is
licensed to practice law in Louisiana.  R. Doc. No. 45-7.)   Brown does not submit any summary judgment evidence
regarding the date of Whitaker's alleged termination.   TMSEL has produced an affidavit swearing that Whitaker
remained employed with TMSEL as a manager of contracts within TMSEL's procurement department until she was
terminated in January 2009 as part of a reduction-in-force that also terminated Hopper.   R. Doc. No. 49-1, pp. 1-2.

discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)).  Brown suffered an adverse employment action when he was terminated.  *Id.*  Nevertheless, despite satisfying the first three elements, Brown cannot satisfy the fourth element of his prima facie case that similarly situated individuals were treated more favorably than himself.[24]

Brown argues that TMSEL's alleged accommodations of white attorneys clearly evidences TMSEL's discriminatory intent.  However, the fact that Brown, Hopper and Popkin are all attorneys is not sufficient to satisfy Brown's *prima facie* case.  Instead, Brown must demonstrate that Brown, Hopper and Popkin, at the time of the alleged discrimination, were "similarly situated" *and* that Hopper and Popkin received favorable treatment compared to Brown.  *Okoye*, 245 F.3d at 512-13.  The Fifth Circuit has explained that "[e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."  *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnote omitted).  "Likewise, employees who have different work responsibilities" are not similarly situated.  *Id.* at 260-61 (footnote omitted).  "This is because [the Fifth Circuit] require[s] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'  The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared

---

[24] Brown was not replaced by someone "outside of [his] protected class." *Okoye*, 245 F.3d at 512-13.  TMSEL did not accept applications for any positions within the legal department following December 2006.  R. Doc. No. 42-8, p. 2.

the same supervisor or had their employment status determined by the same person." *Id.* (footnotes omitted).[25]

The summary judgment evidence presented indicates that neither Hopper nor Popkin were similarly situated to Brown.  Prior to his termination, Brown, who was supervised by Hopper, was responsible for assisting the procurement department with contractual issues, assisting with insurance issues and hurricane FEMA-related matters, and providing legal opinions to TMSEL's departments.[26]  Hopper, as executive counsel, supervised several departments including the Americans with Disabilities Act compliance, customer service, human resources, intergovernmental relations, marketing and public information and legal.[27]  As Brown's supervisor, Hopper was higher in TMSEL's corporate structure.[28]  She herself reported to TMSEL general manager Major.[29]

At the time of Brown's termination, Popkin worked as a safety/risk management analyst in the risk management department, an entirely separate TMSEL department.[30]  James Tillie, director of safety-/risk management, supervised Popkin.[31]  Popkin's position did not require him

---

[25] Brown argues that the Fifth Circuit's discussion in *Lee* with respect to the meaning of "similarly situated" is limited to "primarily disciplinary actions." R. Doc. No. 45, p. 12.  However, courts have relied on *Lee*'s reasoning in cases that did not involve disciplinary actions.  *See Mzyk v. North East Indep. Sch. Dist.*, 397 Fed. App'x 13, 15 (5th Cir. 2010) (affirming magistrate judge's decision that the plaintiff failed to prove "that other employees with whom she compared herself [who received higher pay] were truly comparable" and citing *Lee*); *Medley v. Louisiana State Dep't of Justice*, 2010 WL 4363735, at *8-9 (E.D. La. Oct. 21, 2010) (Barbier, J.), *aff'd* 425 Fed. App'x 369 (5th Cir. 2011) (relying on *Lee* in discussion of whether comparator employees were similarly situated for purposes of disparate compensation); *Hardy v. Shell Chem. Co.*, 693 F.Supp.2d 611, 621 (E.D. La. 2010) (Africk, J.) (citing *Lee* in an analysis of whether comparator employees were similarly situated in order to establish plaintiff's *prima facie* age discrimination claim); *see also Ortiz v. The Shaw Group, Inc.*, 250 Fed. App'x 603, 606 (5th Cir. 2007) (citing *Shackleford*, 190 F.3d at 405-06, for the proposition that "similarly situated means employees with the same position, qualifications, and pay rate" where the plaintiff had not established a *prima facie* case following his termination due to a reduction-in-force).
[26] R. Doc. No. 42-4, pp. 8-9.
[27] R. Doc. Nos. 42-3, p. 19 and 42-5, p. 2.
[28] R. Doc. Nos. 42-3, p. 19 and 42-5, p. 2.
[29] R. Doc. Nos. 42-3, p. 19 and 42-5, p. 2.
[30] R. Doc. Nos. 42-5, p. 2 and 42-8, p. 2.
[31] R. Doc. No. 42-3, p. 20.

to have a law degree or law license.[32]  His duties included, but were not limited to, designing and producing the transportation and maintenance department's monthly safety booklet, maintaining the database in the risk and insurance information system, and providing statistical loss data for analysis.[33]

Consequently, while Brown, Hopper and Popkin were similar in that they all had law degrees, they were not "similarly situated" for the purposes of establishing Brown's *prima facie* case that TMSEL intentionally discriminated against him when he was terminated.  Hopper and Brown were not similarly situated as Hopper was Brown's supervisor and she was tasked with overseeing many TMSEL departments.  Likewise, Brown and Popkin were not similarly situated as they worked in two entirely separate departments and they were responsible for their own, unrelated duties.  Brown has failed to establish, by a preponderance of the evidence, the final element of his *prima facie* case.  *Hamilton v. Texas Dep't of Transp.*, 34 Fed. App'x 151, 151 (5th Cir. 2002) (citing *Texas Dep't of Comm'n Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

"In the context of employment discrimination claims, summary judgment is appropriate for the defendant if the plaintiff fails to establish a *prima facie* case. . . ."  *Goree v. Comm'n Lincoln Parish Detention Ctr.*, 2011 WL 3569007, at *3 (5th Cir. 2011) (citing *Guthrie v. Tifco Industries*, 941 F.2d 374, 378 (5th Cir. 1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992)).  Because Brown is unable to establish his *prima facie* case with respect to his termination in December 2006, summary judgment is appropriate in favor of TMSEL with respect to that claim.

---

[32] R. Doc. No. 42-3, pp. 20-21.
[33] R. Doc. Nos. 42-4, p. 8 and 42-5, p. 2.

IV.    **Failure to Rehire**

      A.    **Brown's *Prima Facie* Case**

Brown further argues that TMSEL discriminated against him for a second time when he applied for the vacant director of contracts and procurement position ("procurement position") for which he was well qualified but, ultimately, TMSEL hired a less qualified white male. TMSEL responds that it had no duty to rehire Brown following his termination. The Court notes that whether TMSEL had any "duty" to rehire Brown is of no moment. The Fifth Circuit recognizes a "refusal to hire" as an actionable adverse employment action. *Breaux*, 205 F.3d at 157. Brown claims that TMSEL refused to hire him despite his qualifications. Consequently, the Court will examine whether Brown has survived summary judgment with respect to this claim.

Again, under the *McDonnell Douglas* framework, Brown must present a *prima facie* case that TMSEL's decision not to hire him constituted intentional discrimination. To do so, Brown must establish that: "(1) he is a member of a protected class; (2) he was qualified for the position for which he applied and for which the employer was seeking applications; (3) he was not hired despite his qualifications, and (4) someone outside of the protected class was hired instead." *Thomas v. Trico Prod. Corp.*, 256 Fed. App'x 658, 662 (5th Cir. 2007) (citing *Crawford v. U.S. Dep't Homeland Sec.*, 245 Fed. App'x 369, 377-78 (5th Cir. 2007); *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th. Cir. 2005)).[34]

---

[34] Brown submits that he must establish that: "(1) he is a member of a protected class; (2) he sought and was qualified for an available employment position; (3) he was rejected for that position; and (4) the employer continued to seek applicants with the plaintiff's qualifications." R. Doc. No. 45, p. 9 (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996)). As the Fifth Circuit acknowledged in *LaPierre*, "[t]he elements of a plaintiff's prima facie case necessarily vary according to the facts of the case and the nature of the claim." *LaPierre*, 86 F.3d at 448 n.3 (citations omitted).

      Based on the facts of Brown's claim, the Court finds that Brown must establish the *prima facie* elements set forth in *Thomas* rather than those in *LaPierre* and, accordingly, utilizes the *Thomas* test. (In *Thomas*, the plaintiff was separated from his position at his defendant employer, later reapplied for another position with his former

Following Brown's termination in December 2006, TMSEL posted a notice seeking applications for the procurement position. The deadline for submitting applications was April 6, 2007.[35] Brown submitted a timely application.[36] TMSEL did not fill the procurement position at that time and extended the deadline to apply until December 14, 2007.[37] Brown timely reapplied for the procurement position.[38] TMSEL finally selected Gawell, a white male who had never been employed with TMSEL, to serve as the director of contracts and procurement.[39]

Brown has submitted summary judgment evidence that he sought and was qualified for the procurement position for which TMSEL was seeking applications. Brown applied for the job on two separate occasions. According to the TMSEL job bulletin for the procurement position, at the time that Brown applied and Gawell was hired, the director of contracts and procurement was to be "[r]esponsible for directing the [RTA]-wide procurement, contract administration, purchasing, and material management program, and related procurement information support systems."[40] During the two decades Brown worked for TMSEL he gained significant experience with procurement procedures and relevant federal and state regulations.[41] Colleagues also respected Brown's procurement expertise.[42] Consequently, Brown has easily established the first three elements of his *prima facie* case: (1) as an African-American he is a member of a protected

---

employer, and was not rehired. A person outside of the plaintiff's protected class was hired instead. In *LaPierre*, the plaintiff's claim was predicated on a failure to promote; the plaintiff was not seeking re-employment with the same defendant employer.)

The Court emphasizes that its selection of the *Thomas* test over the *LaPierre* test does not result in any adverse consequences for Brown because the Court finds that Brown can establish a *prima facie* case as set forth in *Thomas*. Consequently, Brown is able to shift the burden to TMSEL to articulate a legitimate, nondiscriminatory reason for its decision not to hire Brown.

[35] R. Doc. No. 42-11, p. 4.
[36] R. Doc. No. 42-9, p. 1.
[37] R. Doc. No. 42-11, p. 2.
[38] R. Doc. No. 45-5, p. 1.
[39] R. Doc. No. 42-3, p. 14.
[40] R. Doc. No. 42-11, p. 2.
[41] R. Doc. Nos. 42-9 and 45-6.
[42] R. Doc. No. 45-4.

class, *Lyles*, 379 Fed. App'x at 383, (2) he sought and was qualified for the procurement

position, and (3) he was not hired despite his qualifications. *Thomas*, 256 Fed. App'x at 662.

Finally, Brown must show that someone outside of his protected class was hired instead

of himself.  Neither Brown nor Gawell was employed with TMSEL when they applied for the

procurement position.  Both Brown and Gawell were experienced in the fields of contracts and

procurement for transit systems.[43]  *Lee*, 574 F.3d at 260-61.  Gawell, a white male, was hired for

the procurement position.[44]  Consequently, Brown satisfies the fourth and final element of his

*prima facie* case and "[t]he burden then shifts to [TMSEL] to articulate a legitimate,

nondiscriminatory reason for its actions."  *Alvarado*, 492 F.3d at 611.

### B.    TMSEL's Legitimate, Nondiscriminatory Reason

"The burden on the employer at this stage is one of production, not persuasion; it can

involve no credibility assessment."  *Alvarado*, 492 F.3d at 611 (internal citation and quotation

marks omitted).  As such, "[TMSEL] need only articulate a lawful reason, regardless of what its

persuasiveness may or may not be."  *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.

1993).  TMSEL states that it hired Gawell over Brown for the procurement position because

Gawell was "the best person for the job."[45]  The Fifth Circuit recognizes that selecting a

candidate based on the employer's belief as to which applicant is the best qualified for the job is

a legitimate, nondiscriminatory reason.  *Henry v. Continental Airlines*, 415 Fed. App'x 537, 539-

40 (5th Cir. 2011).

Brown responds that the Court cannot consider TMSEL's stated reason in connection

with its motion for summary judgment because it relies upon a portion of the deposition of

---

[43] R. Doc. No. 42-12.
[44] R. Doc. No. 42-3, p. 13.
[45] R. Doc. No. 42-2, p. 20.

TMSEL's corporate representative Mark Major, which is inadmissible evidence.[46]  In his

deposition, Major states that Dwight Duplessis ("Duplessis"), the deputy general manager

responsible for selecting Gawell over Brown, told Major that he believed Gawell was the best

candidate.[47]  Brown argues that, because Major did not interview or screen the applicants,

repeating Duplesiss's opinion "is clearly hearsay and [is] inadmissible establish a legitimate,

nondiscriminatory reason."[48]  TMSEL responds that Major was designated as TMSEL's

corporative representative available to be deposed pursuant to Fed. R. Civ. P. 30(b)(6).  As a

corporation cannot testify in the same manner as a natural person, TMSEL asserts, a corporate

designee with the authority to speak on behalf of a corporation may testify "not only to facts, but

also to [the corporation's] subjective beliefs and opinions."[49]

     The Court recognizes that the Fifth Circuit, with respect to corporate representatives

deposed pursuant to Rule 30(b)(6), has stated that:

> [T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters
> personally known to that designee or to matters in which that designee was
> personally involved.  The deponent must prepare the designee to the extent
> matters are reasonably available, whether from documents, past employees, or
> other sources.  Obviously it is not literally possible to take the deposition of a
> corporation; instead, . . . the information sought must be obtained from natural
> persons who can speak for the corporation.  Thus, a rule 30(b)(6) designee does
> not give his personal opinions, but presents the corporation's "position" on the
> topic. When a corporation produces an employee pursuant to a rule 30(b)(6)
> notice, it represents that the employee has the authority to speak on behalf of the
> corporation with respect to the areas within the notice of deposition. This extends
> not only to facts, but also to subjective beliefs and opinions.

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal footnotes,

citations and quotation marks omitted).  However, at the same time, "a corporate representative

may not testify to matters outside his own personal knowledge 'to the extent that information [is]

---

[46] R. Doc. No. 45, pp. 14-15.
[47] R. Doc. No. 42-3, p. 14.
[48] R. Doc. No. 45, p. 15.
[49] R. Doc. No. 49, p. 8.

hearsay not falling within one of the authorized exceptions.' " *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 Fed. App'x 899, 907-08 (5th Cir. 2010) (citing *Brazos River Auth.*, 469 F.3d at 435 and *Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co.*, 993 F.2d 466, 473 n.29 (5th Cir. 1993)).

TMSEL offers Major's recitation of Duplessis's opinion for the truth of the matter asserted – that is, that Duplessis hired Gawell because he was best qualified for the position.[50]  If Major's deposition testimony that Duplessis believed Gawell to be the best qualified candidate were the only evidence before the Court, the Court's inquiry would stop.  However, TMSEL also submits business records that Duplessis generated at the time he recommended that TMSEL hire Gawell for the procurement position.[51]  These records are supported by an affidavit, satisfying Fed. R. Evid. 902(11), that swears that the records were generated contemporaneously with

---

[50] At his deposition, Major testified:

Q.  Okay.  And what role did you play or have in the selection . . . in the interviewing of the applicants for that position [director of contracts and procurement]?

A.  For the Director of Contract[s] and Procurement, I did not interview any of the applicants. . . .

Q.  Again, I think you testified earlier that was left up to Mr. Duplessis; correct?

A.  That's correct.

Q.  And did he report to you on a daily or weekly basis with respect to the number of applicants and the process or the progress that he was may [sic] making?

A.  He informed me that he was going forward with his interviews, and at the conclusion of his interviews, he informed me that he had selected a candidate.

Q.  Who was that candidate?

A.  Mr. Larry Gaywell [sic]. . . .

A.  Mr. Duplessis informed me that he had selected, in his opinion, the best candidate for the position, and that was Mr. Gaywell [sic].

R. Doc. No. 42-3, pp. 26-27.

[51] R. Doc. No. 49-2, pp. 2-3.

Duplessis's recommendation.[52] As such, their contents are admissible pursuant to the hearsay exception for business records of regularly conducted business activities. Fed. R. Evid. 803(6). These records indicate that Duplessis believed Gawell to have "exceptional experience" and that he would be a "great asset" for TMSEL as director of contracts and procurement.[53] Accordingly, the Court finds that because TMSEL believed Gawell to be the best qualified applicant for the position, it has articulated a legitimate, nondiscriminatory reason for its hiring decisions.

As TMSEL has met its burden of production, "the burden then shifts back to [Brown] to offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's proffered reasoning is not true and is instead a pretext for discrimination, or (2) the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Manora*, 2011WL 3820989, at *3 (5th Cir. 2011) (citing *Alvarado*, 492 F.3d at 611).

**C. Pretext**

Brown argues that TMSEL's proffered reason that Gawell was the most qualified applicant "is a mere pretext for racial discrimination."[54] Brown submits that he was far more qualified than Gawell to serve as the director of contracts and procurement and, moreover, Gawell was not licensed to practice law in Louisiana,[55] which "precluded [him] from holding the position."[56]

First, the Court notes that TMSEL's job bulletin for the procurement position states that, at most, qualified candidates are required to have a bachelor's degree in "Business Administration, Public Administration, Finance, Accounting, Business/Contract Law or [a]

[52] R. Doc. No. 49-2, p. 1. (The Court granted leave to file a corrected version of this document containing the omitted notary's signature at R. Doc. No. 50.)
[53] R. Doc. No. 49-2, pp. 2-3.
[54] R. Doc. No. 45, p. 15.
[55] Gawell has a law degree and he is licensed to practice law in Ohio. R. Doc. No. 42-11.
[56] R. Doc. No. 45, p. 15.

related field."[57]  Furthermore the former director of the procurement department, Gene Wulfekuhler, was not an attorney.[58]  As the candidate selected for the procurement position was not required to have a law degree, much less be licensed to practice law in Louisiana, the Court finds that this prong of Brown's argument regarding pretext lacks merit.

Second, Brown asserts that he was far more qualified for the procurement position and that because TMSEL ignored his qualifications and selected a lesser qualified individual, this establishes pretext.  The Fifth Circuit has held that "[a] plaintiff also may establish pretext by showing that he was 'clearly better qualified' for the relevant position than the selected candidate." *Manora*, 2011WL 3820989, at *5 (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 713 (5th Cir. 2002)); *Thomas*, 256 Fed. App'x at 662 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th. Cir. 2003)).  However, such a plaintiff must make a strong showing that his qualifications clearly exceed those of other candidates:

> To meet this standard, the employee must demonstrate that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999).  In other words, the disparity in qualifications must be so wide "that no reasonable employer would have made the same decision." *Id.* at 282.  Better education, work experience, and longer tenure with a company do not necessarily establish that an applicant is clearly better qualified for a position. *Price*, 283 F.3d at 723.  Ultimately, the law requires only that the employer's decision is "somewhere within the realm of reason." *Deines*, 164 F.3d at 282.  This is because the judicial system is not as well suited to evaluate professional qualifications as those who have trained and worked for years in the relevant field of endeavor. *Id.* at 280.

*Manora*, 2011WL 3820989, at *5.

Brown has not demonstrated that the gulf between his qualifications and Gawell's qualifications is so disparate that no reasonable employer would have made the same decision. Both Brown and Gawell have worked in transit management and procurement-related positions

---

[57] R. Doc. No. 42-11, p. 3.
[58] R. Doc. No. 49-3, p. 165.

for many years.  Gawell has at least a decade of experience with respect to procurement and contracts for the Greater Cleveland Regional Transit Authority, a transit system that is much larger than that of the City of New Orleans and which was named the Best Transit System in North America in 2007.[59]  Gawell is also knowledgeable of Federal Transit Administration compliance requirements and served as counsel for a $168 million bus rapid transit project.[60]

Duplessis interviewed both Brown and Gawell and at the time he made his recommendation to hire Gawell he had a much better grasp of TMSEL's personnel needs than does this Court reviewing his decision more than three years later.  Based on the summary judgment evidence presented, the Court finds that TMSEL's decision that Gawell was the best candidate for the position " 'is somewhere within the realm of reason.' "  *Manora*, 2011WL 3820989, at *5 (quoting *Deines*, 164 F.3d at 282).  As such, Brown has not "offer[ed] sufficient evidence to create a genuine issue of material fact that" TMSEL's reasoning is a pretext for intentional discrimination based on race.  *Manora*, 2011WL 3820989, at *5 (quoting *Price* 283 F.3d at 713."  Summary judgment in favor of TMSEL with respect to Brown's claim that TMSEL intentionally discriminated against Brown when it failed to hire him as the director of contracts and procurement is appropriate.

---

[59] R. Doc. No. 42-12.
[60] R. Doc. No. 42-12.

*CONCLUSION*

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that TMSEL's motion[61] for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Brown's claims against TMSEL are

**DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, October <u>26th</u>, 2011.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[61] R. Doc. No. 42.